ROSS (UNITED STATES v.). See Case No. 16,196.
ROSS (WAKEFIELD v.). See Case No. 17,050.
ROSS (WALTER v.). See Case No. 17,122.

## Case No. 12,081.
### ROSS v. WOLFINGER et al.
### ROSS v. SUNDRY OTHER PARTIES (five cases).

[5 O. G. 117; Merw. Pat. Inv. 448.] [1]

Circuit Court, N. D. Illinois. July 31, 1873.

PATENTS—COMBINATION OF CABINET AND SEWING MACHINE—NOVELTY—INVENTION.

1. A cabinet and a sewing machine being each of them old and well-known articles, and it having been the practice of some manufacturers, previous to the plaintiff's patents, to forward sewing-machines to the purchasers packed in a box large enough to contain the treadle and pitman, and with a hole in the top for connecting the pitman with the machine placed upon it: *Held*, in view of these circumstances, that it required no invention to inclose the treadle of a sewing-machine within a cabinet provided with a door, and to place the stock on the top, so that both should be connected; and a claim for such a combination of a cabinet and a sewing-machine was *held* invalid.

2. There is no invention in placing a box over a sewing-machine when not in use in order to protect it from dust, and a claim for it cannot be sustained.

3. Doubted whether protecting the treadle and pitman of a sewing-machine from dust involves sufficient utility to sustain a patent.

In equity.

E. L. Sherman, for complainant.

Geo. G. Bellows and Geo. L. Chapin, for defendants.

BLODGETT, District Judge. These are all cases brought by the same complainant against the defendants for the infringement of a patent. The patent was granted to Francis A. Ross and William H. Marshall, on the 25th day of August, 1855 [No. 13,499], and reissued on the 26th of February, 1861 [No. 1,145], and then extended on the expiration of the first fourteen years for a term of seven years from the 25th day of August, 1869. The patent contains three claims, but the infringement is only claimed by the bill in this case, and by the complainant's counsel upon the two first claims, which are as follows: We claim—1. Our invention is a combination of a cabinet provided with a proper door or doors with a sewing-machine, in such a manner that the pedal of the machine shall be inclosed by the cabinet and the needle-stock or arm shall be above its upper surface, the combination being substantially such as described. 2. We claim, in combination with

[1] [Merw. Pat. Inv. 448, contains only a partial report.]

the cabinet and the sewing-machine, &c., * * * * * a box or cover substantially such as is described, serving the purpose specified, the combination being substantially such as herein set forth. That is to say, this inventor claims to have invented a combination of a sewing-machine with a cabinet or case upon which it is worked or with which it is used. He does not claim to have invented either the cabinet or the sewing-machine; but has merely put the two together. Taking the sewing-machine off of the table or bench on which it must necessarily stand in order to be operated, he put it on top of a cabinet, and put the foot-pedal to operate it inside of the cabinet, so that it can be operated there, and claims a patent.

The cabinet, as the proof shows in this case, has been used for a great many years as a common household article of furniture for various purposes, used more frequently in the form of a wash-stand in country houses, or what is called a "cottage wash-stand," with doors and conveniences for closing it up in front to conceal the furniture which may be placed there; and all these parties have done was to take a common inclosed wash-stand and put a sewing-machine on it. The evidence shows that, prior to these patents being granted, the Singer Manufacturing Company, who were then just commencing the introduction of their sewing-machine into the market, were in the habit of sending out their machines packed in a box large enough to hold the treadle and the pitman, with a hole cut in the top, or directions for cutting the hole in the top, so that the pitman could be made to connect, and fitting the machine on top of the box, so that the box in which the machine was shipped became the cabinet upon which it was operated or could be used as such; and I can see no difference between the contrivance thus made and introduced by Singer and this patentee's cabinet, except that this patentee has a door hung on hinges, which can be opened or closed at will, and which only excludes the dust from the treadle and pitman, because the machine itself sits on top of the cabinet, and other appliances must be used to keep the dust from the machine. I should have very great doubt whether there is utility enough, practically, in the mere inclosing of the pitman and treadle of a sewing-machine in a box to justify the issuing of a patent for that purpose on the score of usefulness, although the measure of usefulness is not alone the criterion by which the patent office is governed in issuing a patent on the ground that it is both novel and useful. If it has any use at all I think the patent office assumes that the degree or extent or measure of usefulness is not to be inquired into by them; but certainly there is no proof in this case to show that it is any benefit whatever to the pitman and treadle of a sewing-machine to keep them inclosed from the dust. There are very few wearing parts in it—no delicate parts, nothing which would apparently require to be

kept from the dust; but be that as it may, the complainant's device was simply taking an ordinary cabinet or wash-stand and putting his pitman and treadle inside of it and the machine on top of it, and making another box to set over the machine to keep the dust from it. That is all the complainant's device amounts to. I cannot perceive that, in the light of the testimony in regard to the Singer cabinet or case which, as the proof shows, was introduced as early as 1851, there was any novelty in the Ross and Marshall device, as Singer did substantially the same thing before them; and so far as the top box is concerned, which was intended to cover the machine itself, any other covering, such as a cloth or curtain hung or turned over the machine, would naturally suggest itself for the purpose of protecting the machine from dust; and I cannot conceive myself that there is any invention in this device of using a box instead of a cloth or curtain. It is a mere aggregation of useful parts, neither of those parts performing in my estimation, any additional or new functions by being brought together. There is no such act of the mind as arises to the dignity of an invention about this device. There is nothing more than what would ordinarily suggest itself to any person of mechanical skill without a particle of original genius or calling in play any inventive faculty. A person possessing a sewing-machine, and having directions that, in order to work it they must first set it upon a table or upon a bench and adjust the pitman to the treadle in such manner as to produce the motion from the foot, and, seeing that some part of the machinery at least would be liable to injury by dust, would naturally adopt the wash-stand or some such article of furniture as the most convenient and best adapted to subserve the purposes of the new machine; and to turn a box or throw a blanket over it at night, after he or she had placed the machine on the wash-stand, for the purpose of keeping the working parts free from dust, would naturally suggest itself to any person of ordinary habits of neatness and care. I cannot see that any invention is involved in such an act. There is no such origination of a new thing as entitles a party to a patent upon it. I shall, therefore, feel bound, under the testimony in the case, to dismiss all these bills, with the costs, for want of equity.